## Sackett *versus* Spencer.

1. Where one sells land by parol and afterwards conveys, no one can gainsay this, although he was not compellable to convey.

2. Spencer having a contract with Overton for land, Forman's wife advanced the purchase-money and the deed was made to him, he agreeing to reconvey to Spencer, which he did. Afterwards a judgment was recovered

[Sackett *v.* Spencer.]

against Forman under which his interest in the land was sold. In ejectment by the purchaser against Spencer, it was not a question of parol trust and against the Act of April 22d 1856, but whether the transaction was fraudulent.

3. If Forman received the title without paying anything, it was not fraud on his creditors for him to perform the agreement on which he received it.

4. Declarations of Forman after his conveyance to Spencer were not admissible.

5. Evidence that about the time of the reconveyance to Spencer, he was endeavoring to borrow money to pay Mrs. Forman was proper.

March 16th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bradford county* : No. 72, to January Term 1870.

This was an action of ejectment, brought March 23d 1867, by R. H. Sackett against Henry Spencer for a tract of about 114 acres of land.

The question in the case was whether the land in dispute belonged to the defendant or to one Thomas Forman, as whose property the plaintiff had purchased it at sheriff's sale.

The case was tried, September 25th 1869, before Streeter, P. J. It appeared on the trial that the land originally belonged to Edward Overton, who, on the 20th of July 1841, had contracted to sell half to Nehemiah Smith and half to Spencer Smith, the consideration in each case being $150. The defendant became the owner of the contracts, entered into possession and made improvements, gave them up to Overton, and, on the 11th of December 1860, entered into a new contract for the land with Overton for the consideration of $813, payable in annual instalments, the last, $118.70 being due November 1st 1856. Spencer paid no money or not more than $15. Thomas Forman visited Overton with the defendant, Overton having said he would take $100 less than was due on the contract, Forman said he would take a deed and comply with Overton's offer. On the 20th of October 1856 Overton made Forman a deed for the land, which was acknowledged and recorded the same day. At the same time and before the delivery of the deed, the following endorsement which was read to Spencer, was made on the contract :—

" Received this 30th October 1856 of Edward Overton, a deed for the within land ; I having acquired all rights, if any there be, of Henry Spencer, who assents and agrees to such deed.

                    (Signed),            " THOMAS FORMAN.
" Witness, HENRY SPENCER."

Spencer continued to occupy the land and retained the possession. The plaintiff gave in evidence the record of a judgment Lyman Truman *v.* Thomas Forman, entered December 6th 1861, for $1000; fi. fa., October 5th 1866 ; vend. ex., December 31st. Deed from sheriff to plaintiff, February 6th 1867.

[Sackett *v.* Spencer.]

The plaintiff offered to read the recital of the deed from Overton to Forman, the recital being as follows:—"And being the same lot which was originally contracted to be sold to Henry Spencer, but who never paid anything thereon, and the contract has expired, and the said Thomas Forman hath acquired all rights said Spencer may have, and this deed is given by consent of said Spencer." The offer was objected to, rejected, and a bill of exceptions sealed.

The plaintiff rested.

The defendant gave in evidence a deed for the premises from Forman to him for the consideration of $1000, dated January 23d 1861; also notice given at the sheriff's sale that he claimed to own the land, and that the title was not in Forman when the judgment was recovered and had not been since; and rested.

The plaintiff in rebuttal gave in evidence a deed for the premises, dated January 26th 1861, from defendant to Christiana Forman, the wife of Thomas Forman and sister of the defendant, for the consideration of $1000 and recorded the same day. He gave evidence also that in January 1861 Forman was insolvent, that he was connected as a partner in the tanning business with the plaintiff and Charles Sackett, and that the firm was largely insolvent. Charles Sackett was called by the plaintiff; he testified as to Forman's insolvency and other facts for the purpose of showing that the conveyances by Forman and Spencer were fraudulent. The plaintiff then proposed to ask him, "whether in April 1861 he had a conversation with Thomas Forman, in which said Forman gave a reason for having the title to the land in dispute in this case passed to his wife, Christiana Forman, and what the conversation was, and also to ask witness as to said conversation, for the purpose of showing that Forman had said title passed to his wife for the purpose of defrauding creditors." The offer was objected to and rejected, and a bill of exceptions sealed.

The plaintiff gave further evidence for the purpose of showing fraud in the transaction, and rested.

The defendant gave in evidence a deed, dated June 27th 1864, from Christiana Forman with her husband Thomas Forman, to the defendant for the premises, the consideration was $2000.

He offered the depositions of Thomas Forman and Christiana Forman taken under a commission.

In his deposition Forman stated, that he made an arrangement with the defendant in 1856 to advance him money, the terms were "that I, as agent for my wife, should pay up Overton out of her money, and take the title to the farm as security for the advancement; my wife, Christiana Forman, was to advance the money and have security on the farm; it was also well understood by us all, that Spencer was to have the land on paying the amount advanced by my wife, and she should deed to him, on being paid

[Sackett *v.* Spencer.]

up in full. I did, in pursuance of said arrangement, go to said Overton; I did not go in. company with the defendant, but met him there by appointment with him; I paid over to said Overton the balance due on said contract; it was my said wife's money that I thus paid over to Overton; the amount was about nine hundred dollars; I cannot recollect the exact amount; I think it was a little short of nine hundred dollars; a deed was at that time executed and delivered by said Overton to me under the said agreement with the defendant. The deed was executed to me by Overton; nothing was said by us to Overton as to who should be named as grantee in the deed, and he made out the deed to me and I took it without noticing whose name was in it as grantee." Witness said that the defendant made several payments between October 30th 1856 and January 23d 1861, amounting to about $200. "I executed a deed conveying said land to the defendant. The deed was executed to him under the arrangement among all parties, and with the object and purpose of having the defendant reconvey to my wife, to secure her for the balance owing to her of the money I had paid Overton with interest, in case Spencer could not pay her the money then. The object was to get the title into the name of my wife, instead of having it in my name, as security for the money due to her. It was expected that the defendant would then pay up the balance due to my wife, and if he did not get the money he was to give the deed to her as above stated."

Christiana Forman stated she was to let the defendant have $900 to pay Overton. "He was to pay interest, and I was to have the title to the land as my security for the repayment to him of the money again with interest, and on his paying the amount advanced, he was to have the title to the land. The deed was executed with the view, and under the expectation, that the defendant would raise the money and pay me off. The defendant failed to procure the money for me. He accepted the deed, which I had taken down, and he then reconveyed the said land to me to give me security for the money. He still owed me on the same. The deed was to me. I thought it better that I should hold my own securities instead of my husband. The rights of the defendant in the land were to remain as before, and I was to hold the deed as security for the payment of said money he owed me."

There was other testimony in the depositions of the same character. The plaintiff objected to their admission—

1. On the ground that it is giving parol evidence of a trust.

2. The evidence contradicts the writing signed by the parties.

3. The evidence does not show an agreement made at the time of the execution of the deed.

4. Even though the agreement between Spencer and Forman sought to be proved by the evidence offered, amounted only to a mortgage, it was such a trust and confidence of land

[Sackett v. Spencer.]

as comes within the Act of 22d of April 1856, and cannot be proved by parol.

The depositions were admitted and bills of exception sealed.

The defendant also offered to read the deposition of Robert Forman, containing testimony similar to that of Thomas and Christiana Forman. It was objected to on the same grounds, admitted by the court and a bill of exceptions sealed.

The defendant offered to prove by his own testimony that "he made an arrangement with Christiana Forman, by which she was to loan him the money to pay Mr. Overton. That in pursuance of said arrangement defendant met the said Christiana's agent, Thomas Forman, for the purpose of carrying the arrangement into effect. That the said agent then proposed that instead of defendant's giving a note for the money, a conveyance be made to secure the repayment of the money loaned, to which the defendant assented, and it was made accordingly; and at the time of the making the conveyance from said Spencer to said Christiana, on the 26th January 1861, it was made and accepted under a like agreement, that it was merely as security for the amount defendant owed said Christiana Forman."

This offer was objected to on substantially the same grounds as the previous offers, received by the court and a bill of exceptions sealed. He testified as stated in the offer.

The defendant offered to prove by D. H. Burnham and others, that between January 1861 and June 1864, the defendant borrowed money of the witness, and at the time alleged and declared that he was getting it for the purpose of paying it to Mrs. Forman, on the amount he owed her, for money borrowed to pay for his land.

The offer was objected to by the plaintiff. The court admitted the first part of the offer, rejected the declarations of the defendant, and sealed a bill of exceptions for the plaintiff.

The witness testified that the defendant borrowed money of him several times before the deed from Mrs. Forman to the defendant was made. The defendant gave evidence to show that the money loaned to Spencer was the separate estate of Mrs. Forman.

For the plaintiff, Charles Sackett testified, that Forman borrowed money from him to pay for the land; also declarations of Forman when he paid Overton in 1856, that he had got the money from Sackett. There was a large amount of testimony on both sides.

The plaintiff asked the court to charge:—

1. That no trust or confidence of lands can be proved by parol, and that if the jury believe that the arrangement really existed, as sworn to by Spencer and Thomas Forman and Christiana Forman, that Thomas Forman or his wife was to hold the title to the land under this conveyance as security for money advanced to

[Sackett *v.* Spencer.]

Spencer, the arrangement created such a trust or confidence of the land as is within the Act of the 22d April 1856, and that the evidence showing such arrangement should be disregarded by the jury.

2. That where a parol defeasance is set up, it should not only be proved to exist, but its terms should be established, so that there could be a decree of foreclosure or redemption.

3. That the deeds from Overton to Forman and from Spencer to Mrs. Forman being in form absolute conveyances, and followed long before the sheriff's sale, by a deed from Mrs. Forman and husband to Spencer, the possession of Spencer was not sufficient notice to the purchaser at sheriff's sale of Spencer's claim under the secret arrangement, neither was the notice read at sheriff's sale sufficient, but that direct, express and positive notice of Spencer's claim in its essential particulars should have been given in order to be effectual.

4. That if Thomas Forman was insolvent or in failing circumstances on the 23d of January 1861, the conveyance of the land made by him on that day to Spencer, followed by a conveyance within three days thereafter from Spencer to Forman's wife, is strong evidence of fraud in fact, so far as creditors are concerned.

5. That if the jury believe that the title of the land was passed to Forman's wife for the purpose of defrauding or delaying creditors, such arrangement did not divest Forman's interest in this land, but the same would be bound by a judgment recovered against him while this title was in the wife.

6. Spencer having given and permitted to go on record a deed absolute on its face to Thomas Forman, and thereby induced a false credit to Forman, is estopped from setting up as against a creditor of said Forman, that said deed was merely a mortgage.

The defendant asked the court to charge:—

1. If they believe the money paid to Overton, October 30th 1856 and May 4th 1857, was in equity the money of Christiana Forman, that the plaintiff cannot recover.

2. If they believe that the money paid to Overton was in fact the money of Thomas Forman, yet, if it was loaned to Henry Spencer under an agreement that the conveyance should be made to either Christiana Forman or Thomas Forman, to be held as security for the money loaned or advanced, then said conveyance was, as between the defendant and the person beneficially interested in the conveyance, a mortgage.

3. If the conveyance made by Edward Overton was in law a mortgage, the subsequent judgment in favor of Lyman Truman against Thomas Forman was no lien upon the land; the sheriff's sale passed no title to the plaintiff, and their verdict should be in favor of the defendant.

The court charged:—

[Sackett *v.* Spencer.]

" Plaintiff's 1st point. This point is answered in the negative. If the jury believe the evidence of Spencer and Forman and of Christiana Forman, the deed from Overton to Thomas Forman was taken as a security for the loan of money, and under all the authorities was but a mortgage, and is not controlled by the Act of the 22d of April 1856.

" Plaintiff's 2d point. We answer this point in the affirmative, but if the evidence of the Formans and Spencer is believed, there would seem to be no difficulty in regard to the definiteness and clearness of the terms of the defeasance.

" Plaintiff's 3d point is answered in the negative.

" Plaintiff's 4th point. This point, as a general and abstract proposition, is correct, but it requires qualification in this case. If the jury should find, from all the evidence in the case, that the deed from Overton to Forman was an absolute deed, and not given as a security for the loan of money, then this point should receive an unqualified affirmation ; but if they take the defendant's view of the facts, and find that Forman held that deed merely as a security for the loan of money belonging either to himself or to his wife, then the facts stated in the point would be but slight evidences of fraud, and should have but little weight in the case.

" Plaintiff's 5th point. We answer this point in the affirmative, provided the jury believe that Thomas Forman had an absolute title to the land at the time he made his deed to Spencer. If, however, Forman had no title to the land, but held the title as a security for a loan, or if the money paid to Overton for the title was really in law and fact the money of the wife, and the deed from Overton was taken in the name of Forman by mistake or inadvertence, the land would not be bound by a judgment entered against Forman while the title was in his wife.

" Plaintiff's 6th point. This point is answered in the negative. At the date of the entry of Truman's judgment against Thomas Forman, the title on its face was in Christiana Forman, and had been for several months. If Forman had held a deed absolute on its face, at the date of the entry of the judgment by Truman, without notice of the parol defeasances, the point would have been well taken. A deed absolute on its face, but which is held as security for a loan under a parol agreement, is a mortgage between the parties, but will be treated as a conveyance of the land by creditors or other parties interested in the question who are ignorant of the defeasance.

" Defendant's points affirmed.

" The disposition of these points covers the whole case. First, if you find, as stated in defendant's 1st point, that the money paid to Overton, October 30th 1856, and May 4th 1857, was in equity the money of Christiana Forman, that is the end of the case, and your verdict should be for the defendant; but to estab-

lish this fact the evidence should be direct and clear. We have been asked to say that the evidence is not sufficiently clear to warrant us in leaving the question to the jury. This we cannot do. [The evidence of the wife's ownership of the money is not so definite and satisfactory as might be desired, but it is direct and not conflicting, and we submit the question to you without intimating any opinion as to how you should find the fact.] If you find that the wife was not in law and equity the owner of the money, then you will consider the second branch of the case. [Was the money paid to Overton as a loan to Spencer and the deed taken by Forman as a security for the loan? If you find that to have been the true character of the transaction, Truman's judgment was never a lien upon the land, and your verdict should be for the defendant.] If, on the other hand, you find that the money paid to Mr. Overton belonged to Thomas Forman, and the deed of October 30th 1856 was intended as an absolute conveyance, and not taken as a security for the loan of money, the plaintiff is entitled to recover."

The verdict was for the defendant; and the plaintiff took out a writ of error.

He assigned 17 errors.

1–7. Related to the rulings as to evidence.

8–17. Related to the answers to the points and the general charge.

*E. Overton, Jr.*, and *H. Peet*, for plaintiff in error.—Recitals are evidence against parties and privies: Meals *v.* Brandon, 4 Harris 225. A resulting trust is raised only from fraud or payment of the purchase-money: Barnet *v.* Dougherty, 8 Casey 372. The trust set up here is by parol and against the Act of April 22d 1856, § 4, Pamph. L. 533, Purd. 497, pl. 3; Case *v.* Worthington, 1 Root 172; Gaylor *v.* Couch, 5 Day 223. The arrangement was a trust, being a confidence reposed in Forman: Burrell's Law Dic. 8, vol. 2, 549. A mortgage sometimes considered a trust: Richards *v.* Allen, 8 Pick. 405; Conard *v.* Atlantic Ins. Co., 1 Peter's R. 386; Pierce *v.* Dorr, 8 Pick. 239; Goldsmith's Equity 86; 1 Maddock's Chan. 512. But if a trust, it was without notice, and a purchaser could not be affected by notice from Spencer's possession alone: Scott *v.* Gallagher, 14 S. & R. 333; Banks *v.* Ammon, 3 Casey 175; Goepp *v.* Gartiser, 11 Id. 130; Probst *v.* Painter, 5 S. & R. 223; Swartz *v.* Moore, Id. 257; Bellas *v.* McCarty, 10 Watts 13; Heister *v.* Fortner, 2 Binney 40; McCulloch *v.* Cowher, 5 W. & S. 427. Spencer was bound by the endorsement on the contract and the recital in the deed: Olwine *v.* Holman, 11 Harris 284; Hill *v.* Epley, 7 Casey 331; Waters's Appeal, 11 Id. 525. A conveyance of land as security as between the parties is a mortgage, but to all without notice it is

[Sackett v. Spencer.]

a conveyance only: Guthrie v. Kahle, 10 Wright 332; 4 Kent's Com. 141; Hilliard on Real Property 326. The declarations of Forman as to his reasons for passing the title were admissible as bearing on the question of fraud where great latitude is allowed: Deakers v. Temple, 5 Wright 241; Reinhard v. Keenbartz, 6 Watts 93.

*Mercur & Morrow*, for defendant in error.—The conversation with Forman was long after the deed, and could not be received to affect his credit, he not having been interrogated as to it: McAteer v. McMullen, 2 Barr 32; Wertz v. May, 9 Harris 274. The deed, although absolute upon its face, was in fact a mortgage only: Kunkle v. Wolfersberger, 6 Watts 126; Heister v. Maderia, 3 W. & S. 384; Russell's Appeal, 3 Harris 319; Kellum v. Smith, 9 Casey 158. The mortgagor is the owner of the land: Schuyl-kill Nav. Co. v. Thoburn, 7 S. & R. 411. A mortgagee has not such interest as is liable to execution: Rickert v. Madeira, 1 Rawle 325; Craft v. Webster, 4 Rawle 255; Asay v. Hoover, 5 Barr 35. It does not create a trust coming under the 4th section of Act 22d April 1856. To hold that the land was not subject to the trust would be a fraud both on his wife and Spencer: Renshaw v. Gans, 7 Barr 119. If the arrangement with Spencer had been denied, a trust *ex maleficio* would have arisen in his favor: Morey v. Her-rick, 6 Harris 123; Plumer v. Reed, 2 Wright 46. A husband may receive his wife's money as her trustee: Johnston v. Johnston, 7 Casey 453; Tripner v. Abrahams, 11 Wright 221; Bachman v. Killinger, 5 P. F. Smith 414.

The opinion of the court was delivered, March 21st 1870, by

Agnew, J.—The complicated and rather difficult questions of mortgage and trust presented in the paper-book, disappear, when the material facts eliminated from the mass are shown in their proper relations. R. H. Sackett, the plaintiff, claimed title through a sheriff's sale of the land in suit, made in 1867; under a judgment against Thomas Forman, entered December 6th 1861. Forman had conveyed the land to Henry Spencer, the defendant, by a deed dated January 23d 1861, ten months prior to the entry of judgment. At the time of the entry of judgment, therefore, Forman had no apparent title, legal or equitable, consequently the plaintiff could recover only upon establishing such a fraud upon creditors as would destroy the deed from Forman to Spencer. This then was the only question in the case, for as plaintiff in the eject-ment, Sackett could recover only on the strength of this position, and the burden of the proof of it rested on him. It is evident, there-fore, that if the conveyance from Forman to Spencer was bonâ fide, and made on sufficient consideration, that is, if made upon an honest and fair undertaking to convey to Spencer, in considera-

15 P. F. Smith—7

[Sackett *v.* Spencer.]

tion of the payment of the purchase-money procured by Spencer to be paid by another to Overton, the original grantor, the case of the plaintiff must fall, whether the deed from Overton to Forman was absolute or held in trust.    The plaintiff made out a primâ facie case of fraud, by showing that the title was apparently absolute in Forman, and that he was deeply involved in debt at the time of his conveyance. to Spencer, and that in three days afterwards Spencer reconveyed to Christiana Forman, the wife of Thomas Forman.    To support this title the defendant then gave evidence of the previous relations and dealings between himself, Forman and wife, in relation to the land.    Briefly stated, the facts alleged and proved by the defendant were these : Nehemiah Smith and his son had bought the land from Edward Overton, and made a small improvement.    Spencer purchased the interest of the Smiths for $50, surrendered it to Overton and took another. article to himself, dated December 11th 1850.    He entered into immediate possession, extended the improvements, and continued in exclusive possession until this suit was brought against him in 1867.    Having failed to pay Overton the purchase-money on the 30th of October 1856, and just as the last instalment was falling due, he with Forman called on Mr. Overton and had him convey the land to Forman, who paid him the purchase-money.    At the same time Overton, probably to protect himself, made the following endorsement on Spencer's article of December 11th 1850 : " Received this 30th of October 1856 of Edward Overton, a deed for the within land, I having acquired all right, if any there be, of Henry Spencer, who assents and agrees to such deed."    This was signed by Forman and witnessed by Spencer.    The defendant also alleged and proved that the money paid by Forman to Overton belonged to Mrs. Christiana Forman, Spencer's sister, and the wife of Thomas Forman, and that it was advanced by her under an arrangement with Spencer, to relieve him, and the deed taken to her husband acting as her agent, in order to secure its repayment.    So the matter rested till 1861, when Spencer got Forman to convey to him by the before-mentioned deed of January 23d 1861, with the intention of raising the money and paying his debt to Mrs. Forman, but failing to raise it, he reconveyed the property to Mrs. Forman to keep her secure, by the deed of January 26th 1861.    He afterwards made sundry payments to Mrs. Forman and obtained a conveyance from her, giving her his obligation for the balance.    This deed was made in 1864.    At the subsequent sheriff's sale in 1867, of the land as the property of Thomas Forman, Spencer gave notice of his claim of title to it. The defendant, in order to meet the apparent title in Forman, contended at one time that the deed from Overton to Forman was a mortgage, and at another, that it was held in trust for Spencer, to which the plaintiff replied the Act of 1856, on the ground that

the trust was not declared in writing.    Thus the case became complicated by questions as to the absolute or qualified character of the deed to Forman.    But it is evident these questions became immaterial as soon as Forman conveyed to Spencer in January 1861.    By so doing he recognised his liability to convey under the arrangement, whether this arrangement could · be enforced against the land or not under the Statute of Frauds.    He stood in the precisely analogous position of an owner who sells land by parol and receives the purchase-money but delivers no possession. The title remains in him by virtue of the Statute of Frauds and Perjuries, and he cannot be compelled to convey it.    But if he choose to fulfil his verbal agreement and actually conveys to the purchaser, who can gainsay it ?    So it is here : Forman having executed the agreement between him and Spencer by a conveyance, the plaintiff's success depends not on the antecedent character of the deed from Overton to Forman, but on the question whether this deed was a fraud on creditors.    The question of fraud in turn depends on the question, whether the money which paid for the land belonged to Forman or to his wife, and whether it was advanced for the benefit of Spencer under the agreement to convey to him on repayment of the money to Mrs. Forman. If Forman held the land on these terms, and conveyed it to Spencer in compliance with the understanding, it is clear there was no fraud on the rights of creditors, whether he had the power to refuse to convey because of the Act of 1856 or not.    Having received the title without the payment of any consideration by himself, it was no fraud on the rights of creditors to fulfil the understanding upon which he received the title.    His estate had not paid for the land, and nothing had gone into it to which creditors could lay claim, in foro conscientiæ, especially creditors, as in this case, whose debts arose long subsequently to the arrangement by which he acquired the title.    The question of mortgage or not, or trust or not, concerned Forman alone, so long as the title was uncontrolled by the lien of any judgment.    It was in his power, if there were no liens to prevent it, to carry out honestly, and in good faith, the agreement under which he took the title, without payment of any consideration on his own part.    The real question, therefore, was, whether the wife's money paid for the land, and whether he took the title under an honest and fair agreement, to hold it for Spencer's benefit and as a security for his wife's money.    This question was fairly submitted to the jury and controls the case, the verdict being in favor of the defendant. This solution of the main question disposes of all of the assignments of error involving the questions of trust or mortgage.    Thus the true purpose of the evidence excepted to, and set forth in the 3d, 4th, 5th and 6th assignments of error, was to prove the understanding or agreement upon which Forman accepted the title, and

the payment of the purchase-money by his wife, and not the trust character of the deed. In the same manner the points made in the 8th, 9th, 10th, 11th, 12th, 13th, 14th and 15th assignments, relating to the questions of trust and mortgage, became immaterial when Forman executed the parol agreement to reconvey to Spencer by making the deed to him. The parol agreement being executed, the Statute of Frauds was no longer in the case, and the only question remaining was whether the execution of this agreement was a fraud on creditors.

The plaintiff was not injured in point of fact by the refusal of the court to permit the recital in the deed to Forman to be read as set forth in the 1st assignment of error. The deed was actually in evidence, and the plaintiff had a right to pray instruction of the court to the jury on this clause in it. But the reading of the recital was not material, it being an undoubted fact, on which the cause was tried, that Spencer's contract was surrendered and the deed made by him to Forman, discharged by that contract, and the case turned alone on the fact of the purchase-money being paid by Christiana Forman, and the undertaking that on its repayment Forman should reconvey to Spencer.

There is nothing in the 2d assignment of error. The conversation proposed to be proved between Charles Sackett and Forman was in April, after Forman had conveyed to Spencer; what Forman said then could not be received to affect Spencer's title.

The 7th error is not supported. Spencer's attempts to borrow money to pay his debt to Mrs. Forman, were corroborative of the facts already proved, and being at and about the time of the transactions proved, tended to show the bona fides of the transaction, and all being *ante litem motam*.

The 16th and 17th errors are not sustained. The fact was precisely as stated by the judge, there was direct evidence that the money was Mrs. Forman's, and she was not directly contradicted. The fact that Forman got the money of Charles Sackett, or of the firm, to repay what he owed his wife, was not a contradiction of her statement, but merely a circumstance tending to affect her credibility. So far as it went to show that the money really belonged to Forman, and not to her, it was a matter for the jury, and was left to them by the court, in submitting to them the question whether the money was advanced by Mrs. Forman or belonged to Forman himself. This question was fairly submitted to the jury.

Finding no error in the record, the judgment is affirmed.